Leontine Courtney *v.* Prudential Insurance Company of America.

May Term, 1935.

Present: Powers, C. J., Slack, Moulton, Thompson, and Sherburne, JJ.

Opinion filed October 1, 1935.

492

■■■■■■■■■■■■ ■

■■■■■■■■■■■■
■■■■■■■■■■■■
■■■■■■■■■■■■

*Theriault & Hunt* for the defendant.

*Searles & Graves* for the plaintiff.

SHERBURNE, J. This is an action of contract brought by the wife of Thomas Frank Courtney to recover moneys paid by her as premiums on three policies of insurance issued by the defendant upon the life of her husband. Two of the policies were dated June 19, 1922, and the third was dated March 31, 1924. The premiums paid, aggregating 50c. a week, covered the period from November 21, 1927, to May 23, 1932. The policies were all of the same kind, each being styled a "Twenty-year Payment Life Policy," the amounts of insurance being respectively $124, $186, and $290. No beneficiary was named, each policy containing a "Facility of Payment" provision, permitting the defendant to make payment or grant non-forfeiture to any relative or connection of insured, or "to any person appearing to said Company to be equitably entitled to the same by reason of having incurred expenses on behalf of the insured, for his or her burial, or * * * for any other purpose." Among the non-forfeiture provisions it was provided that in the event of a lapse for non-payment of premiums after premiums had been duly paid for at least three full years, "the insured, without any action upon his or her part, will become entitled to non-participating Extended Insurance for the respective term specified in" a quoted table. These policies carried no cash surrender value until they had been in force ten years. Each policy provided for revival after lapse for non-payment of premiums, and that if for any cause the policy should be or become void, all premiums paid should be forfeited to the company except as provided in the policy.

In December, 1926, the insured gave the defendant three premium notes, one for each of the three policies, in the respective sums of $1.40, $2.10, and $3.50, in which he recited that

having applied for revival of the respective policy, he acknowledged the respective arrears. These notes were accepted and retained by the defendant, and on December 20, 1926, each policy was indorsed: ''A lien of'' the respective amount ''bearing simple interest at the rate of 4% per annum exists against this Policy, subject to the terms of Premium Note Form dated 12 20 26.''

The plaintiff and her husband separated in Montreal early in 1929, since which time she has not seen him except for a casual meeting several years ago.

On May 13, 1932, the plaintiff's attorneys wrote the defendant at its home office a letter making inquiry as to the status of the policies. This letter was acknowledged on May 17, 1932, by John Terry, manager of defendant's bureau of information. Under date of May 27, 1932, Terry wrote further: ''We find [these policies] were cancelled by their own terms for the nonpayment of premiums due September 26, 1926, through our Home Office account * * * In the event you desire any additional information, we would thank you to write us again referring to this letter when doing so.'' Under date of June 2, 1932, plaintiff's attorneys again wrote the defendant, attention of John Terry, suggesting that inasmuch as the plaintiff had ''a premium receipt book showing payment of the premiums on these policies to date,'' there must be some error in the information which he sent, and requesting further investigation and advices. Under date of June 17, 1932, Terry replied: ''Inasmuch as you state that your client is holding premium receipt books showing continuous payments have been made, we are writing Superintendent E. Wesley Enman—St. Johnsbury, Vt., in order that the matter may be looked into and you may expect to hear from him in due course.''

In the latter part of June, 1932, Superintendent Enman had an interview with plaintiff's attorney, Graves, and informed him ''that the information which he had received from the Home Office was not correct, that evidently they had made some error in checking the records in the Home Office, that the policies were in force and had been in force.'' On about the same date one Little, cashier in Enman's office, advised Mr. Graves ''that the information contained in the letter from the Home Office was incorrect, and that we had information in our office to prove that the policies had been in force since being revived in De-

cember, 1926.'' At this interview Mr. Graves stated to Little that if the company had incorrectly advised plaintiff's attorneys with reference to the status of the policies, it would be necessary for the company to correct that in writing.

Under date of July 13, 1932, Terry again wrote plaintiff's attorneys a letter, stating: ''Since writing you under date of June 17 we are in receipt of a communication from'' Superintendent Enman, ''in which he states that you do not understand the statements in our letters of May 31 and June 17. However, we would advise that policies *. * * appear cancelled for the nonpayment of premiums due September 6, 1926. * * * In Superintendent Enman's letter he also states that he endeavored to answer fully all questions in regard to this letter and if you desire any further information we would thank you to communicate with us or the above named agent. Hoping that this is the information you desire.''

From the defendant's records produced at the trial and from plaintiff's receipt books it conclusively appears that the defendant had in fact treated the insurance as in force throughout the period covered by the payment of the premiums sought to be recovered.

Upon these facts each party moved for a directed verdict at the close of the evidence. Plaintiff's motion was granted and defendant's motion was overruled. The case comes here upon defendant's exceptions to these rulings.

Relying upon the rule stated in *Holt* v. *Ruleau,* 92 Vt. 74, 76, 102 Atl. 934, that where one has money in his hands belonging to another which he has no right conscientiously to retain, the same may be recovered without previous demand, the plaintiff recites authorities to the effect that an insured person has the right to recover premiums paid where the insurer wrongfully repudiates its contract, and that if the insurer wrongfully cancels or forfeits a policy the insured may treat the contract as rescinded and recover back the premiums paid. She then says that as between her and the defendant no question is involved as to the status of the policies. That she paid her money to the defendant and the defendant accepted it as insurance premiums, but that it had no right to do this for the policies were not in force, and that such acceptance was a palpable fraud upon her.

The plaintiff further says that Terry's letters were equivalent to an expression of purpose to rescind the contract, and that by assenting to the rescission she was entitled to be made whole through a refund of the premiums she had paid. Again she says that the solemn admissions of the defendant that the policies were cancelled are conclusive, and that in reliance upon them she changed her position by seeking a recovery of the premiums paid, and therefore forfeited whatever rights and benefits she might have otherwise possessed, if any, had she continued to pay the premiums and treat the policies in force; that obviously she could not safely continue to pay in view of the defendant's insistence that the policies were cancelled. She says that the fact that the defendant by its conduct may be estopped from denying the validity of the policies does not prevent the recovery of premiums paid through mistake upon a void policy. She cites *Cummings* v. *Connecticut General Life Ins. Co.,* 102 Vt. 351, 361, 148 Atl. 484, to the effect that where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and different consideration. He is not permitted to mend his hold. And finally she says that the defendant is estopped from denying that the policies were cancelled in 1926, and that the bringing of her suit, with the expense and costs involved, was a sufficient prejudice to the plaintiff to support an estoppel.

It is unnecessary to discuss all of the points so raised. The plaintiff and her husband had been long separated. It is very evident that she had wearied of paying the premiums. There was no controversy pending. The plaintiff was not a party to the contract, as she admits.

Her attorney's letters simply called for information. All that Terry did was to endeavor to give it. His statement that the policies appeared cancelled in 1926 for non-payment of premiums was correct. He, however, seemed unable to learn that they had been revived. Yet, in his last letter he states: "If you desire any further information we would thank you to communicate with us or with" Enman, their agent. In view of this expression and the information given to plaintiff's attorneys by Enman and Little, we do not think that the letters are capable of being interpreted as "equivalent to an expression to

rescind the contract" or "as solemn admissions," nor that the plaintiff acting reasonably should have so understood.

On the evidence, the only possible conduct of the plaintiff that was influenced by Terry's letters was the act of bringing this suit. In view of our construction of these letters, it is unnecessary to decide if the mere bringing of a suit with the attendant costs and expenses is a change of position within the meaning of the law of estoppel, as claimed by the plaintiff and denied by the defendant.

██ It was error to grant plaintiff's motion for a directed verdict. Nor was there any evidence fairly and reasonably tending to show that the insurance was not still in force. Hence defendant's motion should have been granted.

*Judgment reversed, and judgment for the defendant to recover its costs.*